
# UNITED STATES DISTRICT COURT
## District of New Jersey

CHAMBERS OF
JOSE L. LINARES
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

**NOT FOR PUBLICATION**

**LETTER OPINION**

October 26, 2006

James Dewey Nichols, Esq.
1086 Livingston Avenue, Suite 1A
North Brunswick, NJ 08902

Neil Rodgers Gallagher, Esq.
United States Attorney's Office
970 Broad Street, Suite 700
Newark, NJ 07102

Re:   Civil Action No. 06-830 (JLL)
      Petition for Review of Denial of Naturalization Application

Dear Parties:

Currently before the Court is Plaintiff, Barrington McCain's, petition for review of denial of his application for naturalization, filed on February 23, 2006. Petitioner indicates that he was denied naturalization on January 21, 2005 based on a finding that he had poor moral character as a result of his conviction of an aggravated felony on November 10, 1993. Following an administrative appeal hearing, this denial was affirmed on September 29, 2005. Petitioner now asks this Court to review his petition pursuant to 8 U.S.C. § 1421(c).

## FACTUAL AND PROCEDURAL BACKGROUND

The essential facts in this case are not in dispute. Petitioner came to the United States from Jamaica in 1987 as a lawful permanent resident. (Pet. ¶ 1; Answer ¶ 1). In 1993, he pled guilty to two counts of violation of N.J. STAT. ANN. § 2C:35-5(b)(11) for distributing marijuana in a school zone and was subsequently sentenced to three years in prison on each of the two counts, to run concurrently.[1] (Pet. ¶ 2; Answer ¶ 2; Answer, Ex. A). In 1999, Petitioner was

---

[1] Although Petitioner was convicted of two counts of N.J. STAT. ANN. § 2C:35-5(b)(11) (see Answer to Pet., Ex. A, Plea Agreement), it appears that N.J. STAT. ANN. § 2C:35-7 is the statute which addresses distribution of

served with a notice to appear for deportation proceedings based on his 1993 drug convictions. (Pet. ¶ 3; Answer ¶ 3). In 2000, Petitioner submitted an N-400 application for naturalization. (Pet. ¶ 4; Answer ¶ 4; Pet., Notice of Mot., Attach. No. 2). In January 2001, Petitioner's petition for naturalization was denied. (Pet. ¶ 5; Answer ¶ 5). In June 2001, Immigration Judge Pugliese ordered Petitioner's removal. (Pet. ¶ 6; Answer ¶ 6). Petitioner then appealed to the Board of Immigration Appeals ("BIA"), which subsequently remanded the petition back to the immigration judge, finding that Petitioner may be entitled to a 212(c) waiver. (Pet. ¶ 7; Answer ¶ 7). In March 2004, Immigration Judge Pugliese granted Petitioner's 212(c) waiver, and thus terminated his removal proceedings. (Pet. ¶ 8; Answer ¶ 8; Pet., Notice of Mot., Attach. No. 1). In January 2005, Petitioner's naturalization application was denied. (Pet. ¶ 9; Answer ¶ 9; Pet., Notice of Mot., Attach. No. 3). An appeal hearing was held in September 2005, at which time Petitioner's application was again denied. (Pet. ¶ 10; Answer ¶ 10; Answer, Ex. B).

## STANDARD OF REVIEW

This Court has jurisdiction to conduct a de novo review of the denial of Plaintiff's application for naturalization pursuant to 8 U.S.C. § 1421(c). Under this statute:

> [a] person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a)[2] of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of Title 5. **Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.**[3]

8 U.S.C. § 1421(c) (emphasis added).

---

a controlled dangerous substance in a school zone. N.J. STAT. ANN. § 2C:35-7 provides that "[a]ny person who violates subsection a. of N.J.S.2C:35-5 by distributing, dispensing or possessing with intent to distribute a controlled dangerous substance or controlled substance analog while on any school property . . . is guilty of a crime of the third degree and shall . . . be sentenced to a term of imprisonment." Because both statutes contain the same substantive elements, with only enhanced penalties for distribution within a school zone, this discrepancy is immaterial to the Court's analysis.

[2] Section 1447(a) of Title Eight of the United States Code provides that "[i]f, after an examination under section 1446 of this title, an application for naturalization is denied, the applicant may request a hearing before an immigration officer."

[3] The Court notes that Petitioner has not requested a hearing in connection with this Petition.

## **STATUTORY BACKGROUND**

8 U.S.C. § 1427(a) establishes the following requirements for naturalization:

> No person, except as otherwise provided in this title, shall be naturalized unless such applicant . . . during all the periods referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

"Good moral character" is defined in 8 U.S.C. § 1101(f), which states, in relevant part:

> No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was . . . one who at any time has been convicted of an aggravated felony (as defined in subsection (a)(43) of this section).

8 U.S.C. § 1101(a)(43)(B) defines "aggravated felony," in relevant part, as:

> [I]llicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18).

18 U.S.C. § 924(c)(2) defines "drug trafficking crime" as:

> "[A]ny felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or the Maritime Drug Law Enforcement Act (46 U.S.C. App. 1901 et seq.).

In Gerbier v. Holmes, the Third Circuit adopted the Davis/Barrett approach for deciding when a state drug offense conviction constitutes an "aggravated felony" under the Immigration and Naturalization Act ("INA").  280 F.3d 297, 303-04 (3d Cir. 2002).  Under the Davis/Barrett approach, there are two routes for determining whether a state drug conviction constitutes an "aggravated felony" under the INA.  See id. at 305-6.

Under the first route, "there are two necessary elements for a state drug conviction to be an 'aggravated felony': (1) the offense must be a felony under the law of the convicting sovereign; and (2) the offense must contain a 'trafficking element' - i.e., it must involve 'the unlawful trading or dealing of a controlled substance.'" Id. at 305. (citing Matter of Davis, 20 I & N Dec. 536, 541 (BIA 1992)).  The Court noted, for example, that the offense of simple

3

possession would thus not satisfy the "trafficking" element. Id. at 305-6.

Under the second route (i.e., the "hypothetical federal felony" route), set forth in Matter of Barrett, 20 I & N Dec. 171 (BIA 1990), "the 'BIA understands [§ 924(c)] to encompass convictions for state offenses, however characterized by the state, if those offenses would be 'punishable' under one of the three specified federal statutes if federally prosecuted, so long as the hypothetical federal conviction would be a felony under federal law, i.e., would be punishable by a term of imprisonment for over one year." Gerbier, 280 F.3d at 306.  In light of the Third Circuit's decision in Wilson v. Ashcroft, this Court need not determine whether Petitioner's state drug conviction constitutes an "aggravated felony" under the second route of the Davis/Barrett approach. 350 F.3d 377, 382 (3d Cir. 2003) (finding that a violation of N.J. Stat. Ann. § 2C:35-5(b)(11) "cannot be analogized to a hypothetical federal felony under Gerbier's route B approach.").

## **DISCUSSION**

Petitioner's application for naturalization was denied by a District Director of the United States Immigration and Naturalization Service ("INS") on January 21, 2005. (Pet., Notice of Mot., Attach. No. 3).  An administrative appeal hearing was held on September 29, 2005 before a District Director of the United States Bureau of Citizenship and Immigration Services[4] ("BCIS") (formerly the INS), at which time Petitioner's application for naturalization was again denied. (Answer to Pet., Ex. B).  The Court, therefore, finds that Petitioner has exhausted his administrative remedies.[5]  In addition, Petitioner, a resident of New Brunswick, New Jersey, subsequently filed his timely request for review of his petition with this Court on February 23, 2006.[6]   As such, the Court has proper subject matter jurisdiction over this petition pursuant to 8 U.S.C. § 1421(c).

At the outset, the Court notes that an alien seeking to obtain the privilege of United States citizenship bears a heavy burden of proof.  "[T]he Government has a strong and legitimate

---

[4] The Homeland Security Act of 2002, 6 U.S.C. §§ 101-507, P.L. 107-296, 116 Stat. 2135 (Nov. 25, 2002), created the Bureau of Citizenship and Immigration Services ("BCIS") within the Department of Homeland Security.  6 U.S.C. § 271(a) (2002).  The Act transferred the functions of the Commissioner of the INS to the Director of BCIS, 6 U.S.C. § 271(b) (2002), and abolished the INS, 6 U.S.C. § 291 (2002).

[5] See 8 C.F.R. § 336.9(d) (stating that a "determination denying an application for naturalization . . . shall not be subject to judicial review until the applicant has exhausted his administrative remedies available to him under section 336 of the Act."); 8 C.F.R. § 336.2(a) (allowing applicants to "request [an administrative] hearing on the denial of the applicant's application for naturalization by filing a request with the Service within thirty days after the applicant receives the notice of denial"); 8 C.F.R. § 310.5(b) (stating that "[a]fter an application for naturalization is denied following a hearing before a Service officer pursuant to section 336(a) of the Act, the applicant may seek judicial review of the decision pursuant to section 310 of the Act.").

[6] See 8 C.F.R. § 336.9(b) (requiring that the petition be filed within 120 days of the Service's final determination, and that it be filed in the district court with jurisdiction over petitioner's place of residence).

interest in ensuring that only qualified persons are granted citizenship.  For these reasons, it has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect.  This Court has often stated that doubts 'should be resolved in favor of the United States and against the claimant.' " Berenyi v. Dist. Dir., Immigration & Naturalization Serv., 385 U.S. 630, 637 (1967) (quoting United States v. Macintosh, 283 U.S. 605, 626 (1931)).

Turning now to the merits of the petition, the Court has reviewed Petitioner's Plea Agreement in connection with his 1993 convictions, which indicates that Petitioner pled guilty to two counts of distribution of marijuana in a school zone (in the third degree), in violation of N.J. STAT. ANN. § 2C:35-5(b)(11). (Answer to Pet., Ex. A).  As a result, on November 11, 1993, the New Jersey Superior Court, Middlesex County, Law Division – Criminal, sentenced Petitioner to two concurrent sentences of three years, with Petitioner becoming eligible for parole after the first year. (Id.)  In the Statement of Reasons section of the Plea Agreement, Superior Court Judge Steven Lefelt noted that "[t]his was a negotiated plea agreement that the court finds acceptable." (Id.)

The Court has also reviewed the decisions rendered by the INS and the BCIS on January 21, 2005 and September 29, 2005, respectively.  The January 2005 decision denying Petitioner's application for naturalization cited poor moral character (as governed by Part 316, General Requirements for Naturalization, Section 316.10) as the reason for denial. (Pet., Notice of Mot., Attach. No. 3).  In particular, the January 2005 decision states: "[y]our record indicates that you have been convicted of an aggravated felony on 11-10-1993.  As per the above references from Section 101(a)(43) of the Act, you are permanently ineligible for naturalization."  The September 2005 decision, reviewing denial of Petitioner's naturalization application, stated that "[y]ou were arrested on 8/27/93 and charged with two drug related offenses.  You plead guilty and were found guilty of two counts of Distribution of Marijuana in a School Zone.  You were sentenced to three years in prison.  Your contention that this charge is not an aggravated felony is without merit." (Answer to Pet., Ex. B).

Petitioner does not contest that he was convicted of two counts of marijuana distribution in 1993.  Instead, petitioner argues that the BIA was incorrect in only considering "the labels of the charges plead to and not to the underlying reality," and, instead, should have examined the validity of the convictions.  (Pet., ¶ 12; Reply at 2).[7]  In support of this statement, Plaintiff argues

---

[7] In his Appeal Brief submitted to the BIA, Petitioner also argues that his 1993 conviction is "outside the 5 year statutory period," and thus should not be considered in determining his eligibility for naturalization. (Pet., Appeal Br. at 2, 4-5).  It appears, however, that Petitioner did not provide an explanation for this statement, nor did Petitioner provide any legal authority to support such an assertion.  Although Petitioner has not raised this argument in his current petition, the Court notes that 8 U.S.C. § 1427(e) specifically provides that "[i]n determining whether the applicant has sustained the burden of establishing good moral character and the other qualifications for citizenship specified in subsection (a) of this section, the Attorney General shall not be limited to the applicant's conduct during the five years preceding the filing of the application, but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period."

5

that the record does not indicate exactly how much marijuana was involved in his 1993 convictions, and that there was no evidence of "trafficking." (Reply at 1). Petitioner also alleges that there was no evidence that he intended to distribute the marijuana; rather, he claims that he was "persuaded by an incompetent public defender to plead guilty" to N.J. STAT. ANN. § 2C:35-5(b)(11) without realizing the implications of the "intent" element contained therein. (Reply at 1-2).

In essence, Petitioner is asking the Court to re-visit the validity of his 1993 convictions. Notably, however, it does not appear that Petitioner filed an appeal of said conviction, nor does it appear that Petitioner filed a motion to vacate, set aside, or otherwise collaterally attack his conviction. While this Court is sympathetic to Petitioner's allegations that the legal counsel rendered to him during the criminal proceeding may have been ineffective, Petitioner has chosen the wrong means for seeking such redress. As such, the sole issue before this Court is whether the crime to which Petitioner pled guilty in 1993 constitutes an "aggravated felony," thus barring Petitioner's request for naturalization pursuant to 8 U.S.C. § 1427(a) and 8 U.S.C. § 1101(f).

N.J. STAT. ANN. § 2C:35-5(b)(11),[8] the New Jersey statute to which Petitioner pled guilty, states, in relevant part:

> (a)      [I]t shall be unlawful for any person knowingly or purposely:
> (1)      To manufacture, distribute or dispense, or to possess or have under his control with intent to manufacture, distribute or dispense, a controlled dangerous substance or controlled substance analog; or
> (2)      To create, distribute, or possess or have under his control with intent to distribute, a counterfeit controlled dangerous substance.
> (b)      Any person who violates subsection a. with respect to: . . .
>
> (11)      Marijuana in a quantity of one ounce or more but less than five pounds including any adulterants or dilutants, or hashish in a quantity of five grams or more but less than one point including any adulterants or dilutants, is guilty of a crime of the third degree except that, nothwithstanding the provisions of subsection b. of N.J.S.2C:43-3, a fine of up to $300,000.00 may be imposed;

Under the first route of the <u>Davis</u>/<u>Barrett</u> approach set forth in <u>Gerbier</u>, the two elements

---

[8] The Court has reviewed the relevant portions of the 1993 versions of N.J. STAT. ANN. § 2C:35-5(b)(11) and N.J. STAT. ANN. § 2C:35-7, and found that the relevant portions are identical to the current versions of the statutes.

necessary for a state conviction to be considered an "aggravated felony" are: (1) the offense must be a felony under the law of the convicting sovereign; and (2) the offense must contain a 'trafficking element' - i.e., it must involve 'the unlawful trading or dealing of a controlled substance." Gerbier, 280 F.3d at 305. In New Jersey, crimes created by statutes are either misdemeanors or high misdemeanors, depending on the degree of punishment imposed. See, e.g., State v. Spence, 79 A. 1029 (N.J. 1911) (noting that New Jersey has disregarded the distinction between felonies and misdemeanors in its criminal statutes). Although New Jersey has abandoned usage of the term felony in its criminal statutes, classifying such crimes, instead, as high misdemeanors, the Supreme Court of New Jersey has determined, albeit in the context of arrest, that "[m]isdemeanors under the crimes act which are punishable by imprisonment for more than a year in state prison, in our judgment, and we so hold, are sufficiently equitable with common law felony . . ." State v. Doyle, 200 A.2d 606, 614 (N.J. 1964). A violation of N.J. STAT. ANN. § 2C:35-5(b)(11) in the third degree is a high misdemeanor pursuant to N.J. STAT. ANN. § 2C:1-4(d). As such, because Petitioner was sentenced to three years imprisonment on each of the two counts, to run concurrently, his conviction is equivalent to a felony. Therefore, the first element of the Davis/Barrett approach has been satisfied.

With respect to the second element, in order to determine if the offense contains a "trafficking element," the Court must determine whether the state drug conviction involves "the unlawful trading or dealing of a controlled substance." Garcia v. Attorney Gen. of the United States, 462 F.3d 287, 293 (3d Cir. 2006) (quoting Matter of Davis, 20 I & N Dec. at 541). Courts generally look to the specific statutory language in making this determination.[9] For example, in Gerbier, the Third Circuit found that Mr. Gerbier's state drug conviction did not constitute an "aggravated felony" under the first route of the Davis/Barrett approach because the criminal offense to which he pled guilty did not necessarily contain the element of trading or dealing. Gerbier, 280 F.3d at 314-15. There, although the criminal offense was labeled "Trafficking in marijuana, cocaine, illegal drugs, methamphetamines, L.S.D. or designed drugs," the actual offense did not necessarily require the act of "trafficking;" instead, it stated, in relevant part:

---

[9] Generally, a court need not look to the underlying facts of the case where "the enumerating statute does not require such an inquiry." Singh v. Ashcroft, 383 F.3d 144, 161 (3d Cir. 2004). However, the Third Circuit has found that certain statutes which are phrased in the disjunctive and thus contain "different crimes with different penalties" require further inquiry beyond the plain language of the statute. Id. at 162. For example, a statute which requires a mens rea of either intent to defraud or intent to injure to suffice for a conviction would call for "an exploration of which of the alternative elements was the actual basis for conviction." Id. at 162. Where statutes are phrased in the disjunctive, the best way to inquire into the underlying conviction is to "look to the charging instrument or to a formal guilty plea" to determine the specific offense to which the party was convicted. Id. at 163. Although the Third Circuit has specifically stated that N.J. STAT. ANN. § 2C:35-5(a)(1), the statute at issue in this case, is phrased in the disjunctive, the Third Circuit went on to note that this particular statute was in a category of statutes which are phrased in the disjunctive but, nonetheless, do not invite further inquiry. Id. at 163 (noting that "the disjunctive words of N.J. Stat. Ann. § 2C:35-5(a)(1) did not differentiate between offenses for purposes of judgment and penalty."). As such, although the Court need not look beyond the statutory language in this case, it should be noted that Petitioner's Plea Agreement includes a formal description of his original charges as **distribution of marijuana** in a school zone. (Answer, Ex. A) (emphasis added).

> Any person who, on any single occasion, knowingly sells, manufacturers, delivers or brings into this state, or who is knowingly in actual or constructive possession of, 5 grams or more of cocaine or of any mixture containing cocaine . . . is guilty of a Class B felony, which felony shall be known as 'trafficking in cocaine.'

Gerbier, 280 F.3d at 313.  Thus, the Third Circuit noted that although the Delaware statute in question punished the sale, manufacture and delivery of cocaine, it also punished the mere possession of cocaine. See id.

Turning now to the statutory elements at issue, N.J. STAT. ANN. § 2C:35-5(b)(11) does not punish the mere possession of marijuana.[10]  Instead, it provides that it shall be "unlawful for any person knowingly or purposely . . . [t]o manufacture, distribute or dispense, or to possess or have under his control with intent to manufacture, distribute or dispense, a controlled dangerous substance or controlled substance analog . . . ." N.J. STAT. ANN. § 2C:35-5(b)(11).  Thus, at the very least, Petitioner was convicted of and pled guilty to possession with intent to distribute, manufacture or dispense said marijuana.[11]  In Gerbier, the Third Circuit specifically found that Mr. Gerbier's state drug conviction did not constitute an "aggravated felony" under the first route of the Davis/Barrett approach because he "did not plead guilty to distribution, solicitation, or possession with intent to distribute or any other fact suggesting that he was trading or dealing . . . ." Gerbier, 280 F.3d at 313.  Implicit in this statement is the fact that possession with intent to distribute would have satisfied the element of trading or dealing necessary to satisfy the second requirement of the Davis/Barrett approach. See, e.g., Garcia, 462 F.3d at 293 (citing to Gerbier for the proposition that "'distribution, solicitation, [and] possession with intent to distribute' suggest trading or dealing in a controlled substance.").

Thus, the Court finds that in order to convict Petitioner of two counts of distribution of marijuana, in violation of N.J. STAT. ANN. § 2C:35-5(b)(11), the government had to have proven that Petitioner either distributed, or possessed and intended to distribute marijuana. See Wilson, 350 F.3d at 382 (stating that the state statutory elements for a conviction under N.J. STAT. ANN. § 2C:35-5(b)(11)  would be satisfied by proof of either distribution or possession with intent to distribute.").  Because proof of either element would satisfy the second prong of the Davis/Barrett approach, i.e., the "trafficking" prong, the Court need not look any further.[12]  See Gerbier, 280 F.3d at 313-14; Garcia, 462 F.3d at 293.  As such, the Court finds that Petitioner's

---

[10] See generally N.J. STAT. ANN. § 2C:35-10 (making it unlawful simply to possess, actually or constructively, a controlled dangerous substance).

[11] See Wilson, 350 F.3d at 382 (interpreting N.J. STAT. ANN. § 2C:35-5(b)(11), and finding that "the state statutory elements would be satisfied by proof of either distribution or possession with intent to distribute.").

[12] See supra note 9 and accompanying text.

8

conviction of N.J. STAT. ANN. § 2C:35-5(b)(11) satisfies both prongs of the first route of the Davis/Barrett approach, and thus constitutes an "aggravated felony."

Therefore, the Court, having considered the arguments of the parties, and having reviewed the evidence submitted by the parties, determines that Petitioner's application for naturalization was correctly denied because he does not meet the good moral character requirement for naturalization pursuant to 8 U.S.C. § 1427(a).

An appropriate order accompanies this opinion.


Dated: October 26, 2006

/s/ Jose L. Linares
JOSE L. LINARES,
UNITED STATES DISTRICT JUDGE